UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

HADIS NUHANOVIC,

Defendant.

NO. CR20-151RAJ

**PLEA AGREEMENT**

The United States of America, by and through Nicholas W. Brown, United States Attorney for the Western District of Washington, and the undersigned Assistant United States Attorneys for said District, and Defendant Hadis Nuhanovic, by and through Defendant's attorney, Jess B. Johnson, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.　　**Waiver of Indictment**.  Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in a Superseding Information.

2.　　**The Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the Superseding Information:

Plea Agreement - 1
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.      Conspiracy to Commit Violations of the Travel Act, as charged in Count 1, in violation of Title 18, United States Code, Section 371.

b.      Filing False Tax Return, as charged in Count 2, in violation of Title 26, United States Code, Section 7206(1).

By entering pleas of guilty, Defendant hereby waives all objections to the form of the charging document.  Defendant further understands that before entering any guilty plea, Defendant will be placed under oath.  Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement. Defendant further waives any objections to venue as to any charge.

3.      **Elements of the Offenses**.  The elements of the offenses to which Defendant is pleading guilty are as follows:

a.      The elements of Conspiracy, in violation of Title 18, United States Code, Section 371, as charged in Count 1, are as follows:

- First, there was an agreement between two or more persons to commit at least one crime as charged in the information or indictment; and

- Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

- Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

(1)      The elements of a Violation of the Travel Act, in violation of Title 18, United States Code, Section 1952(a)(3), are as follows:

- First, the defendant traveled in interstate or foreign commerce or used interstate or foreign wires with the intent to promote, manage, establish, or carry on, or to facilitate the promotion, management, establishment, or carrying on of, Commercial Bribery, in violation of New York Penal Code § 180.3 or California Penal Code § 641.3;[1]

---

[1] New York Penal Code § 180.3 states in pertinent part:

Plea Agreement - 2
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Second, after doing so, the defendant performed or attempted to perform Commercial Bribery;

- Third, the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

b.     The elements of Filing False Tax Return, as charged in Count 2, are as follows:

- First, the defendant signed and filed a tax return for the year [2018] that he knew contained false and incorrect information as to a material matter;

- Second, the return contained a written declaration that it was being signed subject to the penalties of perjury; and

- Third, in filing the false tax return, the defendant acted willfully.

4.    **The Penalties**.  Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

a.    For the offense of Conspiracy (to Commit Violations of the Travel Act), as charged in Count 1:  A maximum term of imprisonment of up to five (5) years, a fine of up to $250,000, a period of supervision following release from prison of up to

---

A person is guilty of commercial bribing in the first degree when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs, and when the value of the benefit conferred or offered or agreed to be conferred exceeds one thousand dollars and causes economic harm to the employer or principal in an amount exceeding two hundred fifty dollars.

California Penal Code § 641.3 states in pertinent part:

(a)  Any employee who solicits, accepts, or agrees to accept money or any thing of value from a person other than his or her employer, other than in trust for the employer, corruptly and without the knowledge or consent of the employer, in return for using or agreeing to use his or her position for the benefit of that other person, and any person who offers or gives an employee money or any thing of value under those circumstances, is guilty of commercial bribery.

(b)  This section does not apply where the amount of money or monetary worth of the thing of value is two hundred fifty dollars ($250) or less.

Plea Agreement - 3
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

three (3) years, and a mandatory special assessment of $100.  If a probationary sentence is imposed, the probation period can be for up to five (5) years.

           b.     For the offense of Filing False Tax Return, as charged in Count 2:  A maximum term of imprisonment of up to three (3) years, a fine of up to $250,000, a period of supervision following release from prison of up to three (3) years, and a mandatory special assessment of $100.  If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements.  Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed.  This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

Plea Agreement - 4
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.      **Immigration Consequences**.  Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States.  Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory.  Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty plea(s) may entail, even if the consequence is Defendant's mandatory removal from the United States.

6.      **Rights Waived by Pleading Guilty.**  Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

a.      The right to plead not guilty and to persist in a plea of not guilty;

b.      The right to a speedy and public trial before a jury of Defendant's peers;

c.      The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d.      The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e.      The right to confront and cross-examine witnesses against Defendant at trial;

f.      The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g.      The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h.      The right to appeal a finding of guilt or any pretrial rulings.

Plea Agreement - 5
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.    **United States Sentencing Guidelines**.  Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offense(s); (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.  Accordingly, Defendant understands and acknowledges that:

a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

8.    **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

1        9.    **Statement of Facts**.  The parties agree on the following facts.  Defendant

2  admits Defendant is guilty of the charged offenses:

3  <u>Conspiracy Count</u>

4        Beginning at a time unknown, but no later than July 2017, and continuing into

5  2020, at Seattle, within the Western District of Washington, and elsewhere, the defendant

6  Hadis Nuhanovic did knowingly and willfully agree with multiple others to commit, and

7  did commit, offenses against the United States, including using a facility in interstate and

8  foreign commerce, with the intent to promote, manage, establish, carry on and facilitate

9  the promotion, management, establishment, and carrying on of an unlawful activity, that

10  is, Commercial Bribery, in violation of New York Penal Law Section 180.03 and

11  California Penal Code § 641.3.  More specifically, Defendant conferred bribery

12  payments, both directly and indirectly, to employees of Amazon.com, Inc. and its

13  subsidiaries ("Amazon") in to order to, among other things, gain access to Amazon's

14  internal protected networks, obtain confidential property and information stored thereon,

15  and procure other competitive benefits on the Amazon Marketplace.  Defendant did so

16  with intent to influence the employees' conduct in relation to the employer's affairs and

17  without Amazon's knowledge or consent, causing significant economic harm to Amazon

   (far in excess of two hundred and fifty dollars).

        At all times relevant, Defendant owned and operated multiple businesses,

  including Buddibox LLC ("Buddibox"), through which Defendant marketed and sold

  goods online, including on the Amazon Marketplace as a "third-party" or "3P" seller.

  Using interstate and foreign wires, Defendant and his associates conferred bribery

  payments to employees of Amazon to manipulate the Amazon Marketplace and to

  unfairly benefit his and other associates' third-party seller accounts at the expense of

  competitors and at times consumers.  By way of example, Defendant engaged multiple

  Amazon employees, at times directly and at times through an intermediary, to pay bribes

  in exchange for their misuse of their employee privileges and network access to benefit

  external parties.  These compromised Amazon insiders agreed to and did accept money

  and payments from Defendant and others, corruptly and without the knowledge or

  consent of the employer, in return for using and agreeing to use their position for the

  benefit of those other persons.  Part of the improper benefit involved the misuse of

  restricted access and privileges of employment to provide third parties access to

  information from protected computers, all for purposes of commercial advantage and

  private financial gain.

        Through the use of bribes, indirect access to Amazon's systems and information,

  and materially false statements and representations, Defendant and his co-conspirators

  engaged in the following categories of conduct, among others:

Plea Agreement - 7
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- <u>Stealing Amazon confidential business information</u>:  Defendant and others bribed Amazon insiders to access, copy and send them confidential information that the insiders misappropriated from Amazon's protected networks, including internal standard operating procedures (SOPs) and Wikis.  The stolen files included, among other things, proprietary algorithms related to the Amazon Marketplace search engine, Amazon's product-review rankings, and the coveted "buy boxes" product listings; the criteria that Amazon considers when determining whether to suspend or reinstate accounts or product listings; Amazon's internal notes, or "annotations" (which others sometimes referred to as "fruit"), about merchant accounts and enforcement actions taken by Amazon; and, Amazon consumers' and employees' identities and contact information. Defendant and others derived substantial commercial benefits from the misappropriated information, including by sharing and selling it within their professional networks.

- <u>Reinstating suspended third-party seller accounts and products</u>: Defendant and others bribed Amazon insiders to reinstate merchant accounts and product listings that Amazon had suspended for reported violations of the Marketplace's terms of use, including customer-safety concerns, counterfeiting complaints from intellectual-property holders, manipulation of product reviews, and other violations of Amazon's policies and codes of conduct.  Defendant conspired with co-defendants to prepare "plans of action" ("POAs") for third-party merchants containing materially false statements, which co-defendants did prepare and submit to Amazon and which Amazon relied upon in making its reinstatement determinations.  In some cases, Defendant further instructed third-party merchants when to file such POAs to coincide with when a complicit Amazon insider was working and could assign the fraudulent POA to him/herself for reinstatement.

- <u>Circumventing Amazon restrictions and limitations</u>:  As part of the conspiracy, Defendant's co-defendants and others bribed Amazon insiders to circumvent, waive, and/or increase Amazon-imposed limitations and fees relating to the amount of inventory that a third-party merchant utilizing the fulfilled-by-Amazon ("FBA") may store at Amazon's various warehouses and fulfillment centers, including hazmat, oversized, and long-term inventory.  Such unauthorized account modifications benefited third-party merchant by increasing sales volume and in turn prominence on the Amazon Marketplace.

- <u>Accessing restricted product categories or brands</u>:  Defendant and others bribed Amazon insiders to obtain supplier invoices (which others sometimes referred to as "peaches") provided by authorized sellers in restricted product categories, such as dietary supplements, or of restricted product brands.  Defendant and others then would alter the invoices and forged invoices to falsely represent that other third-party merchants had acquired goods from verified wholesalers or manufacturers, when in

Plea Agreement - 8
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

actuality, they had not.  Amazon relied on such fraudulent invoices to permit the third-party merchants to market and sell goods in restricted product categories or of restricted product brands.

- Manipulating customer reviews:  Defendant and others bribed Amazon insiders to provide the name and contact information of customers who may have submitted negative reviews.  Defendant and others also operated numerous sham Amazon buyer accounts, using fake information, to purchase goods from certain targeted merchants and submit negative reviews and customer complaints, which were intended to deceive consumers, negatively affect the merchants' sales and position on the Amazon Marketplace, and possibly compel suspensions or other enforcement actions by Amazon.  Alternatively, these sham buyer accounts were used to purchase goods from certain favored merchants and submit positive reviews, which were intended to deceive consumers and Amazon and, based on the algorithms, enhanced the merchants' position on the Amazon Marketplace.

- Surveilling and attacking third-party merchants and product listings:  Defendant and others obtained internal Amazon information on competing third-party merchants and at times manufactured efforts to attack or sabotage certain sellers and product listings, often in order to gain an unfair competitive advantage or to induce certain behavior.  Amazon insiders shared competitive intelligence about the victim sellers' businesses, products, and advertising strategies.  Attacks included review manipulation, discussed above, and "takedowns" through which Defendant's co-defendants and others defaced targeted merchants' product listings with replacement, and in some cases lewd and offensive, content and images, designed to drive away consumers and intimidate the victims.

Defendant initially was introduced to Amazon insiders through an intermediary, in California, and later directly communicated with and paid bribes to such employees.  For instance, between about December 2017 and August 2018, Defendant paid a member of the Amazon Seller Support team located in India, initials R.B., ongoing payments totaling more than $20,000, in exchange for internal information, including about competitors and customers, and for unfair competitive advantages on the Amazon Marketplace.  R.B. also provided authentic product invoices, which Defendant altered and submitted to Amazon to fraudulently gain access to restricted product categories.  During the same period, Defendant paid other corrupt Amazon insiders, including employees with initials C.V. and P.K., for similar improper benefits, for reinstating suspended accounts, and for access to internal and confidential information.  Later, after September 2018, Defendant worked with co-defendants Joseph Nilsen, of New York, and Nishad Kunju, a former Amazon employee in India later terminated for accepting bribes, to continue obtaining internal and

Plea Agreement - 9
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

confidential information and other unfair benefits through the payment of commercial bribes to Amazon employees.

In August 2018, Amazon suspended the Buddibox seller account for fraudulent activity on the Marketplace, which included the suspected payment of bribes to Amazon employees. Since then, Defendant continued operating numerous seller accounts on the Amazon Marketplace under aliases, in circumvention of Amazon's effort to suspend his selling privileges. For instance, he registered numerous seller accounts under fake and alternative names, payment methods not traceable to him, and untraceable IP addresses through one or more Virtual Private Network (VPN) providers. Defendant proceeded to market and sell goods on the Amazon Marketplace through those accounts.

For a period, Defendant also partnered with co-defendant Nilsen and others to market and sell dietary supplements on the Amazon Marketplace. Approval to sell within the restricted product category was obtained through bribes, fake invoices, and other illicit means. Further, their multiple seller accounts were promoted on the Marketplace through bribes, manipulated and fake product reviews, and malicious activity targeting competitors.

Defendant also at times engaged in such conduct for numerous third-party sellers on the Amazon Marketplace, as well as for the benefit of seller accounts he owned and operated with others. In this "consulting" role, Defendant helped a company that sold goods on the Amazon Marketplace, identified as "Client-1" in the charging documents and herein, for payment, with reinstatements, attacks, and other illicit services. For example, in July 2018, Client-1 hired Defendant to attack a competitor on the Amazon Marketplace. Defendant, with the assistance of Nilsen, Kunju, and others, through use of Amazon employees, gathered internal information about the competitor and manufactured a bogus intellectual-property complaint, which they submitted using an alias. As arranged, a bribed employee, namely, C.V., claimed the internal Amazon complaint and suspended the competitor account. Amazon did not discover the fraud for approximately seven days.

In another example, in December 2018, Client-1 agreed to pay, and did pay, Defendant, Nilsen, and co-defendant Ephraim Rosenberg $200,000, to obtain the reinstatement of its seller account, which had been suspended for review manipulation. Using bribes to Amazon employees, Defendant and others gathered internal information about the enforcement action, and Defendant conspired with co-defendants to prepare multiple POAs that contained materially false information about the improper conduct and the remediation efforts, which POAs the co-defendants prepared and submitted to Amazon. On January 9, 2019, Client-1 wired $55,000 to Defendant, which he in turn wired to Effyzaz Inc., Rosenberg's company. On January 12, 2019, Client-1 wired an additional $145,000 to a bank account in Hong Kong, which in turn separately wired

those funds in equal amounts to Defendant and Nilsen in the United States.  Nilsen thereafter sent funds to Kunju, in India, for payment to the Amazon employees.

Defendant's conduct included use of interstate or foreign wires, including those affecting the Western District of Washington, to carry on and promote the scheme. Defendant further agrees that, for the purposes of sentencing, the total amount of bribes paid to Amazon employees by or through him or his co-conspirators exceeded $150,000.

On August 19, 2020, FBI agents seized $100,000 in United States currency (the "Seized Currency") from Defendant's residence, in the Northern District of Georgia. Specifically, FBI agents found the Seized Currency, arranged in $10,000 stacks comprised of $100 bills, in vacuum-sealed packaging hidden inside a llama-shaped ottoman in Defendant's child's bedroom. Defendant admits that he personally obtained more than $100,000 in proceeds as a result of the offense charged in Count 1 of the Superseding Information.

<u>Tax Count</u>

Defendant also actively evaded reporting income and properly paying taxes to the Internal Revenue Service (IRS).  In various communications, Defendant and other members of the aforementioned scheme discussed their intent and efforts to conceal income and avoid the payment of taxes.

For example, on May 20, 2019, for tax year 2018, Defendant willfully filed a false Form 1120S – U.S. Income Tax Return for an S Corporation for his company BuddiBox LLC.  Under penalty of perjury, Defendant reported 2018 gross receipts (Form 1120s, Line 1) for BuddiBox LLC of $826,510.00, while he knowingly had gross receipts of at least approximately $1,446,560.46, in an attempt to evade tax on these unreported gross receipts.  The impact of the underreported gross receipts, which flows through to Defendant's personal return, resulted in the underpayment of taxes in the amount of approximately $125,050, which are due and owing, for tax year 2018.

Similarly, for the tax year 2019, Defendant willfully attempted to evade the assessment of tax by providing an incomplete set of records to his CPA.  This caused the CPA to incorrectly calculate tax due and owing for Defendant and his businesses during the preparation of his returns.  For instance, Defendant reported aggregate gross receipts for two S-Corporations and his Schedule C business of approximately $1,595,425.57, while he knowingly had gross receipts of approximately $1,766,531.17, in an attempt to evade tax on these unreported gross receipts.  The impact of the underreported gross receipts, which flows through to Defendant's personal return, resulted in the

Plea Agreement - 11
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  underpayment of taxes in the amount of approximately $35,403, which are due and
2  owing, for tax year 2019.

3       The parties agree that the Court may consider additional facts contained in the
4  Presentence Report (subject to standard objections by the parties) and/or that may be
5  presented by the United States or Defendant at the time of sentencing, and that the factual
6  statement contained herein is not intended to limit the facts that the parties may present to
7  the Court at the time of sentencing.

8       10.   **Sentencing Factors**.  The parties agree that the following Sentencing
9  Guidelines provisions apply to this case:

Conspiracy Count

11      a.    A base offense level of 8, pursuant to USSG § 2B4.1(a).

12      b.    An offense level enhancement of 10 levels (+10), based on an
13  estimated value of the improper benefit conferred of more than $150,000 (but less than
14  $250,000), pursuant to USSG § 2B4.1(b).

Tax Count

16      a.    A base offense level of 16, pursuant to USSG § 2T1.1(a)(1).

17      b.    An offense level enhancement of 2 levels (+2), because the
18  defendant failed to report or correctly identify the source of income exceeding $10,000 in
19  any year from criminal activity, pursuant to USSG § 2T1.1(b)(1).

20      The parties further agree, consistent with Paragraph 11, that the following
21  Sentencing Guidelines provision applies to this case:

22      a.    An offense level reduction for acceptance of responsibility, as set
23  forth in the paragraph below, conditioned upon Defendant's fulfillment of the
24  requirements stated at USSG § 3E1.1.

25      The parties further agree that they will not recommend that additional adjustments
26  under USSG § 2B4.1, USSG § 2T1.1, or Chapter 3 of the Sentencing Guidelines (Role in
27  the Offense) apply to Defendant's offense level computation.

28

Plea Agreement - 12
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines.  Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11. **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

12. **Recommendation Regarding Imprisonment**.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term no greater than the advisory Sentencing Guidelines range, as calculated by the Court at the time of sentencing. The government agrees that, if the Court imposes an order of forfeiture to include a sum of money in the amount of $100,000 (the "Sum of Money," below), the government will not recommend that the Court impose a fine at the time of sentencing.

Defendant understands that this recommendation is not binding on the Court and the Court may reject the recommendations of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law.  Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court.  Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

Plea Agreement - 13
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13.     **Restitution.**  Defendant agrees that the Court can order Defendant to pay restitution to the victims of Defendant's crimes and, in exchange for the agreements by the United States contained in this plea agreement, Defendant agrees that restitution in this case should not be limited to the offenses of conviction.  Defendant is aware that the United States will present evidence supporting an order of restitution for all losses caused by all of Defendant's criminal conduct known to the United States at the time of Defendant's guilty pleas to include those losses resulting from crimes not charged or admitted by Defendant in the Statement of Facts.  In exchange for the promises by the United States contained in this plea agreement, Defendant agrees that Defendant will be responsible for any order by the District Court requiring the payment of restitution for such losses.

a.      The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds that the defendant is unable to make immediate restitution.

b.      Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution.  Defendant's cooperation obligations are:  (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement

provided by the United States Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including  tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the United States Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview or deposition regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the United States Attorney's Office), and fully and truthfully answering questions during such interview or deposition; and (7) notifying the United States Attorney's Office before transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

   c.   The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).  In addition, in any event, the government will consider Defendant's cooperation regarding restitution in making its sentencing recommendation.

   14.   **Forfeiture of Assets**.  Defendant understands that the forfeiture of assets is part of the sentence imposed in this case.  Defendant agrees to forfeit to the United States immediately Defendant's right, title, and interest in any and all property, real or personal, constituting or derived from, any proceeds that Defendant obtained, directly or indirectly, as a result of his commission of Conspiracy to Commit Violations of the Travel Act, as charged in Count 1 of the Superseding Information. This property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28,

United States Code, Section 2461(c), and includes, but is not limited to, a sum of money in the amount of $100,000 (the "Sum of Money"), representing the proceeds Defendant personally obtained, directly or indirectly, as a result of his commission of the offense charged in Count 1.

Defendant consents to the entry of an Order of Forfeiture for the Sum of Money at the time of sentencing. Defendant does not challenge the United States' seizure and continued restraint of the Seized Currency and further consents that the Seized Currency shall be included in the Order of Forfeiture and forfeited to the United States as a substitute asset pursuant to Title 21, United States Code, Section 853(p). Defendant agrees that the conditions set forth in Title 21, United States Code, Section 853(p)(1)(A)–(E) have been satisfied. Defendant understands that the United States may pursue additional property of Defendant as substitute assets up to the unpaid amount of the Sum of Money.

Defendant understands and acknowledges that the Sum of Money described above is separate and distinct from any restitution the Court may order in this case. The United States agrees, however, that any amount Defendant pays toward restitution or a fine as directed by the Court as part of this sentence related to Count 1 will be credited against the amount owed for the Sum of Money described above. Defendant understands that this agreement related to offset or credit does not affect his potential sentence and any monetary obligations related to the tax offense charged in Count 2.

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effectuate such forfeiture; assisting in bringing any assets located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim, or to assist any third party with filing a claim, to any of the above-described

Plea Agreement - 16
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated.

The United States reserves its right to proceed against any remaining assets not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if said assets constitute or are derived from proceeds of the offense set forth in Count 1.

15. **Abandonment of Electronic Devices, Electronic Files, and Contraband**. Defendant also agrees that, if any federal law enforcement agency seized any electronic devices or illegal contraband that was in Defendant's direct or indirect control, Defendant abandons any interest in such devices or contraband and consents to the federal administrative disposition, official use, and/or destruction of such devices or contraband (and/or the deletion of data stored on such devices), including but not limited to, the devices identified in Attachment A to this Agreement, as well as any contraband or non-contraband files contained on such devices.

16. **Tax Loss Amount**. The United States and Defendant stipulate and agree that the correct amount of tax loss for purposes of sentencing is $160,453, or thereabouts. Defendant understands that this Plea Agreement does not preclude the Internal Revenue Service from assessing and determining any additional civil tax, penalties, and/or interest that may be owed by Defendant. In addition, Defendant understands that Defendant is required to pay costs of prosecution.

Defendant agrees to pay restitution to the Internal Revenue Service in the total amount of $160,453, pursuant to 18 U.S.C. § 3663(a)(3). Defendant agrees that the total amount of restitution reflected in this agreement results from Defendant's fraudulent conduct. The total amount of restitution consists of the following:

//

//

Plea Agreement - 17
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Tax Year | Amount |
|----------|--------|
| 2018 | $125,050 |
| 2019 | $35,403 |
| **Total** | **$160,453** |

Defendant agrees to pay Title 26 interest on the restitution amount; interest runs from the last date prescribed for payment of the relevant tax through the date of sentencing.  The government will provide an updated interest figure at sentencing. Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States.  If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4).  Defendant does not have the right to challenge the amount of this restitution-based assessment. See 26 U.S.C. § 6201(a)(4)(C).  Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise Defendant's obligation to pay any remaining civil tax liability.  Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant understands that he/she is not entitled to credit with the IRS for any payment until the payment is received by the IRS. If full payment cannot be made immediately, Defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. Defendant also agrees to provide the above-described information to the probation office.

If Defendant makes a payment of the restitution agreed to in the paragraphs above prior to sentencing, the payment will be applied as a credit against the restitution ordered.

17.  **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and agrees to move to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

18.  **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States

Plea Agreement - 19
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   has evidence.  Defendant agrees not to oppose any steps taken by the United States to

2   nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

3   Agreement.  Defendant also agrees that, if Defendant is in breach of this Plea Agreement,

4   Defendant has waived any objection to the re-institution of any charges that previously

5   were dismissed or any additional charges that had not been prosecuted.

6          Defendant further understands that if, after the date of this Plea Agreement,

7   Defendant should engage in illegal conduct, or conduct that violates any conditions of

8   release or the conditions of confinement (examples of which include, but are not limited

9   to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while

10   pending sentencing, and false statements to law enforcement agents, the Pretrial Services

11   Officer, Probation Officer, or Court), the United States is free under this Plea Agreement

12   to file additional charges against Defendant or to seek a sentence that takes such conduct

13   into consideration by requesting the Court to apply additional adjustments or

14   enhancements in its Sentencing Guidelines calculations in order to increase the applicable

15   advisory Guidelines range, and/or by seeking an upward departure or variance from the

16   calculated advisory Guidelines range.  Under these circumstances, the United States is

17   free to seek such adjustments, enhancements, departures, and/or variances even if

18   otherwise precluded by the terms of the Plea Agreement.

19          19.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

20   Defendant acknowledges that, by entering the guilty plea(s) required by this Plea

21   Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any

22   pretrial rulings of the Court, and any rulings of the Court made prior to entry of the

23   judgment of conviction.  Defendant further agrees that, provided the Court imposes a

24   custodial sentence that is within or below the Sentencing Guidelines range (or the

25   statutory mandatory minimum, if greater than the Guidelines range) as determined by the

26   Court at the time of sentencing, Defendant waives to the full extent of the law:

27          a.    Any right conferred by Title 18, United States Code, Section 3742,

28   to challenge, on direct appeal, the sentence imposed by the Court, including any fine,

restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

        b.     Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

      This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

      If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

      20.    **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

      21.    **Statute of Limitations**.  In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

      22.    **Completeness of Plea Agreement**.  The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter.  This Plea Agreement binds only the United States Attorney's Office for the Western District

1  of Washington.  It does not bind any other United States Attorney's Office or any other

2  office or agency of the United States, or any state or local prosecutor.

3      Dated this 26 day of September, 2022.

6  _____

7  HADIS NUHANOVIC
   Defendant

10  _____

11  JESS B. JOHNSON
   Attorney for Defendant

13  _____

14  NICHOLAS MANHEIM
   Assistant United States Attorneys

Plea Agreement - 22
*United States v. Nuhanovic*, CR20-151RAJ

**ATTACHMENT A**

1. Dell Desktop (G8WNND2)

2. 64 GB Sandisk USB

3. HP Server Z840 Workstation (serial: USH524L0Z6)

4. Sabrent external hard drive (serial: 60236028909449)

5. Kingston hard drive (serial: 08733932407862)

6. Dell desktop (service tag HR9MRS2)

7. Two Sabrent external hard drives

8. Western Digital hard drive

9. White iPhone IMEI: 358754055948301

10. Dell XPS computer tower (black) with power cord

11. Dell laptop silver with 16GB SD card (Dell XPS laptop)

12. iPhone - Red with clear case

13. Samsung Solid State Drive (SSD) - Black Inside Black "SABRENT" case with cord

14. iPhone – Black

15. iPhone - Black/Space Gray

Plea Agreement - 23
*United States v. Nuhanovic*, CR20-151RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970